The opinion of the Court was delivered by
Glover, J.
This is an appeal to reverse the judgment of Glover, J., at chambers, refusing to order a writ of prohibition to restrain the town council of Newberry from collecting taxes levied upon the relator’s property real and personal. In 1841 the village of Néwberry was incorporated, and the extent of the corporate limits was circumscribed by a line “one mile in each and every direction from the court-house now standing in said village.” (11 Stat. 162.) By an amendment of the charter in 1847, (11 Stat. 439,) the town, council *346 was authorized “ to levy and collect a tax on all the property which shall be liable to a public tax within the corporate limits of the town of Newberry, (except that all real property within the said corporate limits shall be liable as village property,) for the purpose of paying the debts and contracts which may be entered into by the said town council,” &c. ■The sixth section of an Act ratified in 1851, (12 Stat. 114,) provides: “ That' the Act incorporating the town of New-berry, together with the amendments thereto, be and the same are hereby extended for fourteen years, with all the rights, powers and privileges heretofore granted, subject to the 'following amendments, limitations and restrictions, to wit, that in any one year no tax on the lots, lands and buildings within the said corporate limits shall exceed twenty cents ad valorem on every hundred dollars of the value thereof, and that the tax on all other property, free persons of color, employments, faculties and professions, in any one year, shall not exceed fifty per cent, on the State tax levied for the year preceding; provided, that no lands or negroes employed exclusively for agricultural purposes shall be subject to taxation.”
The relator’s property, on which a tax has been levied by the town council, is within the corporate limits, but he suggests, “ That about 1829 he purchased a tract of about one hundred and eighty acres of land in the neighborhood of said village, which, with bodies of land then owned by him, and other bodies since purchased, (all bounding so as to make one body of land,) now amount to about two thousand acres. That the tract of one hundred and eighty acres, first mentioned, is the only one of the' whole which approaches the village. At the time of its purchase the village was not incorporated. That with a view of living out of the village and on his body of land, about 1834, he erected some outhouses at the place where he now lives, and abandoning his residence in the village, removed his family to them in De *347 cember, 1834, and occupied them until he could erect a dwelling house, which was commenced the latter part of 1836. That the place chosen for these buildings was considerably within the limits of the one hundred and eighty acre tract'of land, and that about 1836 he removed his negroes from their quarter, about two miles from the village, to houses erected for them at his quarter, near his present residence. That he refused to pay any town tax, because his' whole property was an agricultural establishment. That he lives upon a tract of land as purely agricultural as that of any other planter in the district; that he uses it and his negroes on it ‘ exclusively’ as other planters use theirs, and as he would have used his lands and negroes, or would now use them, if he were living outside of the corporation circle aforesaid. He has a house, as every planter has, and he has servants about it as planters have, most of whom labor, as often as they can be spared, in an agricultural way; but neither he nor they are engaged in any mercantile way, nor in the pursuit of any craft or mechanical trade for public gain.” Belying upon these suggestions, the relator contends that all his property within the corporate limits is exempt from a village tax. If the proviso in the Act of 1851 contemplates an “agricultural establishment,” the position is well taken, as all the land constituting, and all the negroes employed upon it, are the necessary incidents of such an establishment. The power conferred upon the town council by the Act of 1847, to levy and collect' a tax, embraces all property liable to a public tax within the corporate limits, and all land is expressly made liable as village property. So much of the land as is included, and so many of the negroes as live within these boundaries, and are not exclusively used and employed for agricultural purposes, are the subjects of such taxes as the town council is authorized to levy and collect. If the intention was to extend the exemption to all lands and negroes within the corporation, where a part only was devoted to agriculture, then the whole tract and all the slaves, including the mansion and menial *348 servants, would be embraced; but the word exclusively negatives tbe presumption of sucb an intention. The Legislature seems to have contemplated a case where, within the corporation, the use of some of the lands and the labor of some of the slaves might be confined to agriculture, while the use and labor of others might be directed to horticulture, or to domestic employments; where to agriculture, it is the exclusive and not the divided employment that constitutes the exemption. An occasional diversion of labor from agriculture to domestic duties may not affect the exclusive employment of it; but when the use of land or service of slaves is not confined to agriculture exclusively, or acquires an agricultural character only as an incident to a plantation, the proviso does not apply. To give effect to the words, we must distinguish'between the use of property strictly agricultural, and the lot and mansion and servants employed in menial duties. Suppose the Act had authorized the imposition of a tax upon all lands and negroes within the corporation, exclusively employed in agriculture, would it be contended that the lot, mansion and domestic servants are included, because incident to “ an agricultural establishment ?” The object of the proviso is to distinguish between lands and negroes cultivated and employed either as rural or village property, exempting the former from, and subjecting the latter to taxation.
As it does not appear, either from the suggestions or from the return of the town council, that a tax has been levied upon lands or negroes “ exclusively employed for agricultural purposes,” the motion to reverse the judgment is dismissed. If such a tax shall be levied, the collection of it will be restrained; or if questions shall arise respecting the character of the employment of the land and negroes, an issue may be proper.
Motion dismissed.
O’Neall, Wardlaw, Withers, Whither, and Munro, JJ., concurred.

Motion dismissed.